UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHERYL W.,[1]
    *Plaintiff*,

v.

KILOLO KIJAKAZI,
    *Defendant*.

No. 3:22-cv-1476 (VAB)

**RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

Cheryl W. has filed an administrative appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3) against Kilolo Kijakazi, the Commissioner of Social Security ("Commissioner"), seeking to reverse the decision of the Social Security Administration ("SSA") denying her claim for Title II Disability Insurance Benefits ("DIB"), or, in the alternative, to remand the case for a new hearing. The Commissioner has moved to affirm the decision.

For the reasons explained below, Cheryl W.'s motion is **GRANTED** and the Commissioner's motion is **DENIED**. The decision of the Commissioner is **VACATED** and **REMANDED** for rehearing and further proceedings in accordance with this Ruling and Order.

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Background**

      1. Disability Application

On June 21, 2018, Cheryl W. filed an application for DIB. Social Security Tr. at 17, ECF No. 10 ("Tr.").[2] Her application was denied both initially and upon reconsideration. Mem. in Supp. of Mot. to Reverse Decision of the Comm'r at 3, ECF No. 13-1 ("Mem. in Supp. of Mot. to Reverse").

On November 4, 2019, Cheryl W. requested a hearing and appeared before Administrative Law Judge Alexander Borré ("ALJ Borré" or "the ALJ") on April 29, 2021. *Id.*

On May 24, 2021, ALJ Borré denied Cheryl W.'s claims. Tr. at 14.

At Step Two, the ALJ found that Cheryl W. had severe conditions, including left Bell's palsy with intermittent vertigo, asthma, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id*. at 20.

At Step Three, the ALJ found that no listing was met or equaled. *Id*. at 21.

The ALJ found that Cheryl W.'s residual functional capacity ("RFC") was as follows: she could perform "simple, repetitive tasks in an environment without strict production quotas and no interaction with the general public." *Id*. at 22. She could not "climb ladders, ropes or scaffolds or tolerate more than occasional exposure to temperature and humidity extremes" nor could she "tolerate concentrated exposure to dusts, gases and fumes." *Id*. (citation omitted).

At Step Four, the ALJ determined that Cheryl W. was unable to perform any past relevant work. *Id*. at 27.

Finally, the ALJ found that there are jobs that exist in significant numbers in the national

---

[2] Where the internal pagination of the transcript conflicts with the ECF-generated pagination, this Opinion refers to the ECF-generated pagination.

economy that Cheryl W. could perform.³ *Id*.

Following an unsuccessful request for review to the Appeals Council, which was denied on September 20, 2022, Cheryl W. appealed to this Court. Tr. at 6; Compl., ECF No. 1.

    2. Medical History

On January 3, 2016, Cheryl W. presented to the emergency room with a facial droop and constant throbbing pain in her left ear. Pl.'s Medical Chronology ¶ 1, ECF No. 13-2 ("Pl.'s Facts"). Her examination was consistent with Bell's palsy. *Id*.

On February 2, 2016, she presented with vertigo symptoms severe enough to cause falls at home, in addition to Bell's palsy. *Id*. ¶ 2.

On May 23, 2018, Cheryl W. presented with complaints of coughing, congestion, and great difficulty sleeping and was assessed with acute bronchitis and mild intermittent asthma. *Id*. ¶ 8. During a follow-up for her asthma, Cheryl W. also reported increased wheezing. *Id*.

On September 25, 2018, Claudia Carbonari, MD, completed a medical source statement for Cheryl W. *Id*. ¶ 11. Between 2004 and 2018, Cheryl W. had been seen for generalized anxiety, major depression, and ADHD. *Id*.

---

³ The ALJ specifically referenced the job of "assembler," who, according to the DOT, "[a]ssembles motor vehicles, such as automobiles, trucks, buses, or limousines, at assigned work stations on moving assembly line, performing any combination of following repetitive tasks according to specifications and using handtools, power tools, welding equipment, and production fixtures: Loads stamped metal body components into automated welding equipment that welds together components to form body subassemblies. Positions and fastens together body subassemblies, such as side frames, underbodies, doors, hoods, and trunk lids, to assemble vehicle bodies and truck cabs preparatory to body welding process. Bolts, screws, clips, or otherwise fastens together parts to form subassemblies, such as doors, seats, instrument control panels, steering columns, and axle units. Installs mechanical and electrical components and systems, such as engine, transmission, and axle units; pumps; wire harnesses; instrument control panels; and exhaust, brake, and air-conditioning systems. Fits and adjusts doors, hoods, and trunk lids. Seals joints and seams, using caulking gun. Fastens seats, door paneling, headliners, carpeting, molding, and other trim into position. Fills vehicle systems with brake and transmission fluids, engine coolant, and oil. May apply precut and adhesive coated vinyl tops and pads to vehicle roofs. May verify quality of own work and write description of defects observed on documents attached to vehicle bodies. May enter and retrieve production data, using computer terminals. May work as member of assembly group (team) and be assigned different work stations as production needs require or shift from one station to another to reduce fatigue factor. May participate in group meetings to exchange job related information. May be designated according to component assembled or installed as Assembler, Engine (auto. mfg.); Assembler, Seat (auto. mfg.); or stage of assembly as Assembler, Body (auto. mfg.); Assembler, Chassis (auto. mfg.); Assembler, Final (auto. mfg.); Assembler, Trim (auto. mfg.)."

3

On October 5, 2018, Cheryl W.'s surgical pathology report was interpreted to show an invasive carcinoma. *Id*. ¶ 12. Cheryl W. underwent lumpectomy surgery for breast cancer on November 7, 2018. *Id*. ¶ 14. Cheryl W. then underwent a re-excision of the anterior margins on November 27, 2018. *Id*. ¶ 16.

On December 18, 2018, Cheryl W. had a radiation oncology consultation where her genetic testing came back consistent with Lynch syndrome. *Id*. ¶ 19.

On September 18, 2020, Cheryl W. began seeing Sally Nguyen, LCSW, following a referral by her oncology team for behavioral health treatment. *Id*. ¶ 37.

On March 11, 2021, Ms. Nguyen wrote a letter confirming Cheryl W.'s anxiety and depression diagnoses. *Id*. ¶ 50.

### B. Procedural History

On March 17, 2023, Cheryl W. filed a motion seeking the reversal of the decision of the Commissioner. Mot. to Reverse Decision of the Comm'r, ECF No. 13; Mem. in Supp. of Mot. to Reverse.

On May 17, 2023, the Commissioner filed a motion to affirm the decision of the Commissioner. Mot. to Affirm the Decision of the Comm'r, ECF No. 15; Mem. in Supp. of Mot. to Affirm the Decision of the Comm'r, ECF No. 15-1 ("Mem. in Supp. of Mot. to Affirm").

## II.   STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on the correct legal

standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). It is generally "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, No. 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). On the other hand, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand a case if the ALJ only committed harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**III.     DISCUSSION**

In order to be entitled to benefits under the Social Security Act, a plaintiff must

demonstrate that they have a disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This determination is made through a five-step evaluation.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b).

If they are not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, then the ALJ proceeds to Step Three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are *per se* disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not *per se* disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must establish whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to perform past relevant work, the ALJ bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ

proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act . . . . However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.").

Cheryl W. argues that the Commissioner's decision should be reversed for two reasons. First, she argues that the ALJ made a reversible error by weighing the medical opinions in a manner inconsistent with regulation, thus relying on his own opinion rather than any medical opinions. Mem. in Supp. of Mot. to Reverse at 2. Second, Cheryl W. argues that the ALJ erred by formulating an RFC description that lacked multiple exertional and non-exertional factors. *Id*.

The Court addresses each argument in turn.

### A. The Evaluation of Medical Evidence

#### 1. *Treating Physicians*

The ALJ considered an opinion from Cheryl W.'s treating physician, Dr. Cabonari, which included a treatment summary and an opinion that Cheryl W. had reduced functionality in the areas of handling frustration appropriately and carrying out multi step instructions. Tr. at 25. The ALJ found this opinion persuasive. *Id*. The ALJ also considered a July 2020 treatment history and symptomatology and an April 2021 functionality assessment from Dr. Carbonari. *Id*. The ALJ wrote that the April 2021 opinion was inconsistent with the totality of the evidence and did not find the opinion persuasive. *Id*.

Cheryl W. argues that in finding Dr. Carbonari's second two opinions not to be persuasive, ALJ Borré "substituted his layperson opinions for Dr. Carbonari's long-term treating expert opinion." Mem. in Supp. of Mot. to Reverse at 11.

The Commissioner responds that the ALJ provided a convincing rationale for not finding Dr. Carbonari's July 2020 letter persuasive, and that the ALJ properly evaluated Dr. Carbonari's April 2021 opinion for supportability and consistency before finding it not to be persuasive. Mem. in Supp. of Mot. to Affirm at 17–18.

The Court agrees.

"Under the new [SSA] regulations, "[a] survey of . . . cases . . . show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." *Ting v. Comm'r of Soc. Sec.*, No. 23-CV-1241 (PKC), 2024 WL 815841, at *7 n.12 (E.D.N.Y. Feb. 27, 2024) (quoting *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (citations omitted), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022)).

"[T]he ALJ must 'explain how he considered' both the supportability and consistency factors, as they are 'the most important factors.'" *Rama v. Acting Commissioner of Social Security*, No. 22-CV-6928 (JLC), 2023 WL 8379265, at *11 (S.D.N.Y. Dec. 5, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2) and *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors)).

ALJ Borré explained that he did not find Dr. Carbonari's April 2021 opinion persuasive

8

because the record—specifically, notes from Cheryl W.'s treating therapist documenting generally normal mental status findings—did not show a significant decline in cognitive functioning, as Dr. Carbonari opined. Tr. at 25. This explanation shows that the ALJ considered whether Dr. Carbonari's opinion was supported by and consistent with the record.

Accordingly, the ALJ provided a sufficient explanation for how he weighed this evidence in the opinion. *See Rossi v. Comm'r of Soc. Sec.*, No. 1:19-CV-5416 (FB), 2021 WL 3037590, at *1 (E.D.N.Y. July 19, 2021) (noting that the SSA amendment deleting the requirement that ALJs articulate "good reasons" for the weight they give opinions from treating sources "certainly cannot override the longstanding principle that an ALJ must explain his or her decision at least well enough to allow meaningful judicial review").

### 2. Consultative Examiners

The ALJ considered opinions from a physical consultative examiner, Yacov Kogan, MD, and a psychological consultative examiner, Andrew Pleshkevich, Ph.D. Tr. at 26. The ALJ noted that Dr. Kogan opined that Cheryl W.'s exertional abilities were mildly limited but did not specify the exertional level that Cheryl W. can perform. *Id*. Due to the omission, the ALJ found Dr. Kogan's opinion only partially persuasive. *Id*. The ALJ also found Dr. Pleshkevich's opinion partially persuasive because although his assessment regarding Cheryl W.'s social abilities was consistent with her reports, she did not have a history of negative interactions in the workplace and reported positive personal relationships. *Id*.

Cheryl W. argues that ALJ Borré substituted his own judgment for that of Dr. Pleshkevich in finding his opinion only partially persuasive. Mem. in Supp. of Mot. to Reverse at 12.

The Commissioner responds that, in finding Dr. Pleshkevich's opinion only partially

9

persuasive, the ALJ explained that Cheryl W.'s history suggested a greater level of social ability than opined. Mem. in Supp. of Mot. to Affirm at 6.

The Court agrees with Cheryl W.

An ALJ has a duty to develop the record where obvious inconsistencies exist. *See Daniela B. v. Kijakazi,* No. 1:22-cv-03495-NRM, 2023 WL 3719634, at *7 (E.D.N.Y. May 30, 2023) (explaining that an ALJ has an "affirmative duty to recontact a medical expert if an ALJ makes an initial determination that a medical expert's opinions are vague or appear to be inconsistent with their examination notes"); *Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *4 (E.D.N.Y. Sept. 23, 2022) ("[T]he most obvious gaps in a record typically are akin to missing medical evidence, inconsistencies or vague opinions can also create a duty to further develop the record." (citing *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656, at *6–8, 10 (E.D.N.Y. Sept. 30, 2021))). Here, the ALJ noted an inconsistency between Dr. Pleshkevich's assessment of Cheryl W., which showed intact cognitive abilities, and his opinion that certain social abilities were moderately impaired, which the ALJ stated was consistent with Cheryl W.'s reports but inconsistent with her history. Tr. at 26. The record, however, does not contain any indication that the ALJ contacted Dr. Pleshkevich to reconcile this alleged inconsistency in his report.

Thus, the Court may remand the case for further development or more specific findings. *See Delacruz v. Astrue*, No. 10 CIV. 05749 (JGK), 2011 WL 6425109, at *26 (S.D.N.Y. Dec. 1, 2011), *report and recommendation adopted*, No. 10 CIV. 5749 JGK MHD, 2011 WL 6425101 (S.D.N.Y. Dec. 21, 2011) (citing *Rosa*, 168 F.3d at 82–83 ("[I]f there are gaps in the administrative record, the court may properly remand the case for further development of the evidence or for more specific findings.")).

### B. The Residual Functional Capacity Assessment

The ALJ found that Cheryl W. has the capacity to perform medium work limited to "simple, repetitive tasks in an environment without strict production quotas and no interaction with the general public." Tr. at 22. ALJ Borré also found that Cheryl W. could not climb ladders, ropes, or scaffolds, tolerate more than occasional exposure to temperature and humidity extremes, or tolerate concentrated exposure to dusts, gases and fumes. *Id*. Generally, ALJ Borré found that Cheryl W.'s "conservative treatment, mild clinical findings and admitted abilities" supported a finding that she is capable of performing medium work. *Id*. at 25.

In making these determinations, ALJ Borré stated that Cheryl W.'s medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that the intensity, persistence and limiting effects of the symptoms she reported are not entirely consistent with the evidence. *Id*. at 23.

Cheryl W. argues that, without the benefit of reliable medical opinions, the ALJ failed to incorporate several critical factors into his RFC description. Mem. in Supp. of Mot. to Reverse at 17.

The Commissioner responds that any failure to incorporate additional restrictions in the RFC findings is harmless. Mem. in Supp. of Mot. to Affirm at 16–17.

The Court disagrees.

"Under Social Security regulations, 'medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.'" *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 Fed. App'x 75, 78 (2d Cir. 2018) (quoting 20 C.F.R. § 404.1567(c)); *see also Urtz v. Acting Com'r of Soc. Sec.*, 159 F.3d 1349 (2d Cir. 1998) ("The Commissioner's regulations define medium work as involving lifting no more than fifty

pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and standing for approximately six hours out of an eight-hour work day." (citing 20 C.F.R. §§ 404.1567(c), 416.967(c))). "For purposes of medium work, a claimant must be able to 'frequent[ly] lift[ ] or carry[ ] objects weighing up to 25 pounds' and lift 'no more than 50 pounds.'" *Trepanier*, 752 Fed. App'x at 78 (quoting 20 C.F.R. § 404.1567(c) (alterations in original)); *cf. Garcia v. Chater*, 3 F. Supp. 2d 173, 173 (D. Conn. 1998) (crediting the "plaintiff's testimony that he can walk for an hour, stand for an hour, lift fifty pounds and sit for six hours" in determining that he "retains the capacity to perform a full range of light to medium work"). Indeed, "an employer would be entitled to rely on this aspect of the definition[, the lifting of no more than 50 pounds,] as well as the 'frequent lifting or carrying' component." *Trepanier*, 752 Fed. App'x at 78 (quoting 20 C.F.R. § 404.1567(c)).

Here, there is not sufficient record evidence to support the notion that Cheryl W. could satisfy these threshold lifting requirements and do medium work. *Cf. Mark H. v. Comm'r of Soc. Sec.*, 5:18-cv-1347 (ATB), 2020 WL 143415, at *9 (dismissing the argument that the ALJ "failed to cite to any specific evidence to support the conclusion [that the plaintiff] is capable of lifting the weight corresponding to medium work" because "the opinion of [the consultative examiner] provided substantial evidence to support a RFC of medium work . . . ."). Significantly, while the ALJ determined that Cheryl W. is capable of performing medium work, the ALJ found the physical consultative examiner, Dr. Kogan, "only partially persuasive," Tr. at 21, because that "opinion does not specify the exertional level the claimant is capable of performing or note specific abilities or limitations." *Id.*

In the absence of any evidence of exertional level in that opinion, the ALJ then relied on the assessments provided by the State Agency consultants, who "found that the claimant is

12

capable of performing work at all exertional levels with no public interaction." *Id.* But there is no record evidence—much less, substantial evidence—to support the notion that Cheryl W. can perform work "at all exertional levels." Given the significance of resolving this important issue, whether Cheryl W. can "'frequent[ly] lift[ ] or carry[ ] objects weighing up to 25 pounds'" and lift "'no more than 50 pounds[,]'" and the absence of any record evidence, the ALJ's decision as to Cheryl W.'s RFC cannot be affirmed. *See Vecchitto v. Saul*, No. 3:19-CV-00726-TOF, 2020 WL 4696791, at *6 (D. Conn. Aug. 13, 2020) ("[T]he only evidence directly related to the Plaintiff's ability to lift, was her testimony during the benefits hearing that she cannot lift more than 10 pounds and has difficulty lifting in general because of her tremor and cervical spine impairment. . . . Accordingly, the Court concludes that . . . her medical records are not 'sufficiently comprehensive to permit an informed finding by the ALJ.'" (quoting *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015))); *cf. Trepanier*, 752 Fed. App'x at 78–79 (upholding a medium work finding by the ALJ because there was "substantial evidence in the record," including the claimant's own statements about lifting capacity and a treating physician's assessment, which provided "substantial evidence supporting the ALJ's determination that [the claimant's] medical problems did not prevent him from performing the lifting requirements of his past medium exertional job"); *Garcia*, 3 F. Supp. 2d at 173 (crediting the "plaintiff's testimony that he can walk for an hour, stand for an hour, lift fifty pounds and sit for six hours" in determining that he "retains the capacity to perform a full range of light to medium work").

Accordingly, the Court will remand this case for the ALJ to further develop the record.

## IV. CONCLUSION

For the reasons explained above, Cheryl W.'s motion is **GRANTED** and the

Commissioner's motion is **DENIED**. The decision of the Commissioner is **VACATED** and **REMANDED** for rehearing and further proceedings in accordance with this Ruling and Order.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at New Haven, Connecticut, this 8th day of March, 2024.

*/s/ Victor A. Bolden*
Victor A. Bolden
United States District Judge
